IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JOAQUIN BROWN,                           *

    Plaintiff,                           *

vs.                                      *        CASE NO. 4:08-CV-150 (CDL)

RACHEL J. LEWIS a/k/a Rachel             *
Brown; JAMES LEWIS; RICHARD
HAGLER, Attorney; KENNETH                *
FOLLOWILL, Judge, Superior Court
of Muscogee County, GA; CHILD            *
SUPPORT SERVICE FOR MUSCOGEE
COUNTY, GA,                              *

    Defendants.                          *

_____

O R D E R

    In this action, Plaintiff Joaquin Brown brings various federal and state law claims against his ex-wife, Defendant Rachel Lewis; his ex-wife's spouse, James Lewis; his ex-wife's former attorney, Richard Hagler; Judge Kenneth Followill of the Muscogee County, Georgia Superior Court; and the Office of Child Support Services for Muscogee County, Georgia ("OCSS"). Plaintiff's claims stem from a divorce granted in Muscogee County over twenty years ago in 1985. Presently pending before the Court are Plaintiff's motions to unseal various state court documents (Docs. 2 & 33); Defendant Hagler's Motion to Dismiss Complaint (Doc. 17); the Motion to Dismiss of Defendants Followill and OCSS (Doc. 18); and Plaintiff's Motion to Amend/Correct his original Complaint (Doc. 23). For the following reasons, the Court denies Plaintiff's motion to amend and motions to unseal (Docs.

1

2, 23 & 33); grants the motion to dismiss filed by Defendants Followill and OCSS (Doc. 18); and grants Defendant Hagler's motion to dismiss (Doc. 17).

Neither Defendant Rachel Lewis nor Defendant James Lewis has filed a motion to dismiss. Therefore, several claims against them will remain pending after the entry of this Order. However, the Court has serious concerns as to whether Plaintiff's remaining claims against these Defendants are barred by the applicable statute of limitations. In fact, Plaintiff's present Complaint and proposed amended complaint would not survive a motion to dismiss by these Defendants based upon the expiration of the statute of limitations. Plaintiff is hereby notified that the Court intends to dismiss Plaintiff's claims against these Defendants unless Plaintiff files an amended complaint within fourteen days of this Order that alleges specific facts showing that Plaintiff's claims against these two Defendants are not barred by the statute of limitations.

FACTUAL ALLEGATIONS

Plaintiff, who is proceeding *pro se,* alleges the following, which must be accepted as true for purposes of the pending motions to dismiss. *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). In April 1985, Defendant Rachel Lewis ("Ms. Lewis") filed a complaint for divorce in the Superior Court of Muscogee County, seeking child support and a division of property. Plaintiff requested a trial by jury and sought a portion of the couple's marital property. In June

2

1985, Defendant Kenneth Followill ("Judge Followill") granted Ms. Lewis a divorce and reserved all issues relating to alimony, attorney's fees, child support, and division of property for a jury trial or further determination by the court.  Plaintiff, who was serving in the armed forces at the time, had orders to attend the advanced non-commissioned officer course in Fort Sill, Oklahoma, after which he would be stationed in Germany.  Plaintiff agreed that his children would remain in the United States with Ms. Lewis and that he would continue to pay the mortgage on the marital home as child support.  Plaintiff further agreed that the parties would complete the division of property and finalize child support when he returned home from Germany.  Plaintiff paid Ms. Lewis's attorney, Defendant Richard Hagler ("Hagler"), $1500 to ensure he would not get behind on these payments while he was in Germany.  (Compl. ¶ 4, at 2-3.)

Plaintiff alleges that while he was stationed overseas, Hagler filed an amendment to Ms. Lewis's original complaint for divorce alleging that Plaintiff committed adultery and threatened Ms. Lewis. Plaintiff further alleges that this amendment was made without his knowledge and while he was not represented by counsel. (Compl. ¶ 5, at 4.)  Subsequent to this amendment, Ms. Lewis "was awarded everything" in the divorce, and the related court order stated that Plaintiff failed to appear in court.  (*Id.*)  At some later date, Plaintiff's wages were garnished, ostensibly for failure to pay child

support based on another court order about which Plaintiff contends he knew nothing.  (*Id.* at 4-5.)

When Plaintiff returned from overseas, he filed a petition to set aside the court orders that had been entered in his absence.  On July 12, 1989, the court set aside all orders except the temporary order entered on July 8, 1985.  (Compl. ¶ 5, at 5.)

On August 24, 1989, Ms. Lewis filed a contempt citation against Plaintiff.  Exactly what transpired next is unclear from the Complaint, but Plaintiff was ultimately incarcerated for being $33,375 in arrears on his child support payments.  Plaintiff spent nine days in jail and paid $5,500 before he was released.  (*Id.*)

In 1990, Defendant James Lewis ("Mr. Lewis") adopted the minor daughter of Plaintiff and Ms. Lewis.  Plaintiff contends that the adoption was illegal because he was never contacted about it.  In addition, despite his daughter's adoption, Plaintiff continued to pay child support for her until she turned 21 years of age.  Plaintiff further contends that Ms. Lewis and Hagler continued to file motions that Plaintiff either did not know about or did not agree with and that Ms. Lewis disposed of marital property by way of illegal court orders signed by Hagler and Judge Followill.  (Compl. ¶ 5, at 6.)

Plaintiff contends that the actions of Defendants give rise to federal claims for violations of the Servicemembers Civil Relief Act

("SCRA"), 50 App. U.S.C. § 501 *et seq.*,[1] and 42 U.S.C. § 1983. Plaintiff also raises state law claims for violations of the "Civil Practice and Remedies Code 331.08[02]," illegal adoption, illegal garnishment of child support, fraud, and malpractice.   (Compl. ¶ 6 (brackets in original).)   Plaintiff seeks compensatory and punitive damages in the amount of ten million dollars.[2]   (*Id*. ¶ 7.)

DISCUSSION

## I.   Motion to Amend Standard

The Court must first address Plaintiff's motion to amend his Complaint to add the Georgia statutes relevant to his state law causes of action.   Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading[.]"   At any time

---

[1]Plaintiff actually cites to the "Soldiers' and Sailors' Civil Relief Act of 1940."   (Compl. ¶ 2.)   On December 19, 2003, these statutes were amended and renamed the Servicemembers Civil Relief Act, and these amendments apply to any case that is not final before December 19, 2003. *See* Pub. L. No. 108-189, § 3, 117 Stat. 2835, 2866 (to be codified at 50 App. U.S.C. § 501 *et seq.*).   The SCRA provision at issue in this case appears substantially similar to the provision in the pre-amendment version of the statute.

[2]Plaintiff has also filed motions entitled "Intervenor's Petition in Intervention & Motion to Unseal Court Records" and "Motion to Unseal Court Records."   (Docs. 2 & 33.)   Plaintiff's motions are, in effect, a petition for a writ of mandamus in which this Court would be required to order a state court to unseal records, vacate the state court's sealing order, and open the records to the public.   This Court has no authority to grant Plaintiff's request.   *See, e.g., Parker v. Phillips*, 27 F. App'x 491, 494 (6th Cir. 2001) ("Federal courts . . . have no authority to issue a writ of mandamus directing a state court or its judicial officers in the performance of their duties.").   In addition, to the extent Plaintiff requests a hearing on this issue, the Court finds in its discretion that such hearing is unnecessary.   *See* M.D. Ga. R. 7.5.   Plaintiff's motions are therefore denied.

thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave."    Fed. R. Civ. P. 15(a)(2).    A "court should freely give leave when justice so requires."    *Id.*    However, a court may deny leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."    *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam); *see also Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006) (per curiam).    The Eleventh Circuit has found that "'denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.'"    *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

In determining whether a motion to amend is futile, the Court examines whether the proposed amended complaint is "subject to dismissal" under Federal Rule of Civil Procedure 12(b)(6).    Under that standard, the Court determines whether, "construing the [proposed] complaint in the light most favorable to the plaintiff and accepting as true all facts which the plaintiff alleges," the proposed complaint fails to state a claim upon which relief may be granted.    *Day*, 400 F.3d at 1275.    The proposed amended complaint must include sufficient factual allegations "'to raise a right to relief

6

above the speculative level'" and "'to raise a reasonable expectation that discovery will reveal evidence of'" the plaintiff's claim or claims. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295, 1296 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 556 (2007)).

For the following reasons, the Court finds that even if Plaintiff were permitted to amend his Complaint in the manner he requests, it would still be subject to dismissal. Thus, Plaintiff's motion to amend is denied as futile, and Defendants' motions to dismiss are granted.

## II.  Plaintiff's Federal Law Claims

The Court first addresses the two federal law claims asserted by Plaintiff's Complaint and his proposed amendments.[3]   Plaintiff contends that he has causes of action arising under the SCRA and 42 U.S.C. § 1983.   Plaintiff's federal law claims are due to be dismissed in their entirety.

### A.   Claims Under the SCRA

The SCRA "was enacted to protect active military personnel from having their legal remedies expire during that time in which they are unable to assert them due to the unique demands placed upon personnel by virtue of their military service." *McMurtry v. City of Largo*, 837 F. Supp. 1155, 1157 (M.D. Fla. 1993).   To this end, the law provides:

---

[3]Plaintiff's proposed amendments do not affect his federal law claims.

If a default judgment is entered in an action covered by this section against a servicemember during the servicemember's period of military service (or within 60 days after termination of or release from such military service), the court entering the judgment shall, upon application by or on behalf of the servicemember, reopen the judgment for the purpose of allowing the servicemember to defend the action if it appears that --

(A) the servicemember was materially affected by reason of that military service in making a defense to the action; and

(B) the servicemember has a meritorious or legal defense to the action or some part of it.

50 App. U.S.C. § 521(g)(1).  Plaintiff contends that various orders related to his divorce, alimony and child support payments, as well as the adoption of his child, violate the SCRA because they were entered without his knowledge and while he was on active military duty.  (Compl. ¶ 5; Pl.'s Br. in Opp'n to Mot. to Dismiss 1 [hereinafter Pl.'s Resp.].)  As discussed in more detail below, Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.  Furthermore, even if these claims were not barred by *Rooker-Feldman*, they must be dismissed because they can only be brought in the court in which the judgments were entered.[4]

---

[4]It is also unclear whether the SCRA even provides a private right of action for damages under the circumstances presented by this case. *See McMurtry*, 837 F. Supp. at 1157 (noting that there is no private cause of action expressly provided by the SCRA; the law "is merely intended to secure [a servicemember's] legal rights until he may return" (internal quotation marks omitted)); *see also Davidson v. Gen. Fin. Corp.*, 295 F. Supp. 878, 881 (N.D. Ga. 1968) (holding that the former version of the SCRA "nowhere allows a damage action").  Even if the SCRA did provide a private right of action for damages, the *Rooker-Feldman* doctrine would still bar Plaintiff's claims in this case because in order to find in Plaintiff's favor, the Court would have to find that Plaintiff suffered an injury as a result of a state-court judgment and then review and reject

"The *Rooker-Feldman* doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001). The foundation of the doctrine is that "'federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts.'" *Id.* (quoting *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc)). The United States Supreme Court has confined the *Rooker-Feldman* doctrine "to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those arguments." *Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Eleventh Circuit recently adopted this language as the test for determining whether a state-court judgment falls within the bounds of the *Rooker-Feldman* doctrine. *Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009).

In this case, Plaintiff appears to challenge state court orders that he contends violated the SCRA because they were entered without his knowledge while he was serving on active duty in the military. There appears to be no reason why Plaintiff could not have challenged these orders in the superior court. In fact, Plaintiff did file a

---

that judgment. *See Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005).

petition to set aside all the superior court's orders that had been entered while Plaintiff was overseas on military duty, and he was largely successful in obtaining this relief. (Compl. ¶ 5 at 5 ("On July 12, 1989 an order was done to set aside all amendments except the temporary order July 8, 1985.").) A federal court challenge to these orders is precisely what is prohibited by the *Rooker-Feldman* doctrine: a federal case brought by a state-court loser complaining of an injury caused by a state-court judgment rendered before this action commenced and seeking district court review and rejection of the state-court judgment. *See Exxon-Mobil*, 544 U.S. at 284. The Court lacks jurisdiction to reexamine those claims already raised by Plaintiff in the superior court.

Plaintiff also challenges the superior court orders related to his daughter's alleged adoption. However, the *Rooker-Feldman* doctrine both "applies to claims actually raised in state court and to claims that were not raised in state court but are 'inextricably intertwined' with the state court judgment, so long as the plaintiff had a reasonable opportunity to raise the claim in state proceedings." *Slizyk v. Smilack* (*In re Slizyk*), 278 F. App'x 946, 948 (11th Cir. 2008) (per curiam). Although the Complaint is unclear with respect to whether Plaintiff ever challenged the superior court's orders related to the adoption, a superior court order terminating parental rights and granting an adoption is certainly reviewable in the Georgia court system. *See, e.g., Johnson v.*

*Taylor*, 292 Ga. App. 354, 354, 665 S.E.2d 49, 50 (2008) (natural parent's appeal of an order terminating parental rights based on an adoption petition).  Because Plaintiff could have challenged the superior court's order in the superior court, Plaintiff's adoption-related SCRA claim is also barred by *Rooker-Feldman*.[5]

Furthermore, the plain language of the SCRA confirms that under the circumstances presented by this case, an affected servicemember should seek relief in the court in which the judgment was entered. 50 App. U.S.C. § 521(g)(1) ("[T]he court entering the judgment shall . . . reopen the judgment for the purpose of allowing the servicemember to defend the action[.]").  Courts have held that a plaintiff's "exclusive" remedy under the SCRA is to petition the court entering the judgment to reopen the judgment. *Cf. Davidson v. Gen. Fin. Corp.*, 295 F. Supp. 878, 880 (N.D. Ga. 1968) (applying former version of SCRA).  The SCRA simply "does not empower this court to collaterally review, vacate or impede the decisions of a state court." *Shatswell v. Shatswell*, 758 F. Supp. 662, 663 (D. Kan. 1991) (holding that "[j]udgments made in violation of the [SCRA] are subject to attack only in the courts which rendered the judgment");

---

[5]Although it is unclear from the Complaint which claims Plaintiff actually raised before the superior court, any claims Plaintiff had related to his divorce also could have been raised in superior court. *See* O.C.G.A. § 19-5-1 (authorizing superior court to grant divorces); *see also Slizyk*, 278 F. App'x at 948 (affirming district court's decision not to review a challenge to a portion of a divorce decree because it was inextricably intertwined with the state court judgment and plaintiff could have challenged the decree in state court).  These claims would likewise be barred by the *Rooker-Feldman* doctrine.

*see also Selvera v. Selvera*, No. Civ. A. SA01CA1098EP, 2003 WL 721449, at *3 (W.D. Tex. Jan. 31, 2003) (holding that "'[n]o right or jurisdiction was vested by the [SSCRA] in federal district courts to vacate or impede an order or judgment of a state court or to interfere with the exercise by a state court of the jurisdiction conferred on it by the Act'" (quoting *Redding v. Ninth Fed. Sav. & Loan Ass'n*, 55 F. Supp. 361, 370 (S.D.N.Y. 1944)) (alterations in original)).

In sum, the Court declines to express an opinion regarding whether Plaintiff may be able to seek relief under the SCRA in the superior court. The Court finds, however, that it lacks jurisdiction to revisit the superior court's orders in the present action. The Court therefore dismisses Plaintiff's SCRA claims.

B.    Claims Under 42 U.S.C. § 1983

Plaintiff also asserts that Defendants violated his federally protected rights and are liable under 42 U.S.C. § 1983. Under this provision,

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory .
> . . subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . . .

Plaintiff asserts that on September 7, 1989, he was jailed for being in arrears on child support. Plaintiff contends that "[t]he Courts would allow [him] out of jail only if he signed documents that agreed

12

to all previous court procedures." (Compl. ¶ 5, at 5.) Plaintiff then alleges that he "refused to sign the documents and stayed in jail. After nine days in jail and paying $5,500.00 [Plaintiff] was released from jail. This is false imprisonment." (*Id.*) Plaintiff's § 1983 claims are based on these allegations. (*See* Compl. ¶ 6.) Even though the Eleventh Circuit recognizes causes of action for false arrest and malicious prosecution, *see, e.g., Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007), Defendants' motions to dismiss are granted for the following reasons.[6]

### 1. Judge Followill

Plaintiff contends that Judge Followill's alleged § 1983 liability for false imprisonment and malicious prosecution stems from the fact that "Judge Followill signed all orders including the contempt orders on [Plaintiff]." (Pl.'s Resp. 2.) It is well-established that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (internal quotation marks omitted). "The Supreme Court has set forth a two-part test for determining when a

---

[6]To the extent Plaintiff attempts to recast his SCRA claim as a § 1983 violation, this attempt fails. *See, e.g., Auston v. N. Carolina*, No. 96-1158, 1997 WL 312285, at *2 (7th Cir. June 5, 1997) (holding that the plaintiff's § 1983 and SCRA claims were barred by the *Rooker-Feldman* doctrine because "it is settled that a plaintiff may not seek reversal of a state court judgment simply by casting his complaint in the form of a civil rights action") (internal quotation marks omitted).

judge is entitled to immunity from money damages liability when sued under section 1983." *Simmons v. Conger*, 86 F.3d 1080, 1084 (11th Cir. 1996).  First, the Court must determine "whether the judge dealt with the plaintiff in a judicial capacity." *Id.*  Second, the Court must determine "whether the judge acted in the clear absence of all jurisdiction." *Id.* at 1085 (internal quotation marks omitted); *see also Stump*, 435 U.S. at 356 ("[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him.").

Judge Followill was acting in his judicial capacity when he found Plaintiff in contempt for failing to pay court-ordered child support payments.  The conduct that Plaintiff alleges was illegal "was a normal judicial function in a case pending before the judge, occurred in the judge's courtroom, and arose from dealings with the judge in his official capacity." *Rolleston v. Eldridge*, 848 F.2d 163, 164 (11th Cir. 1988); *see also Stump*, 435 U.S. at 362 (holding that in determining whether a judge's action was "judicial," a court should examine "the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity").  Judge Followill was also acting within his jurisdiction. A superior court judge in the state of Georgia has jurisdiction to jail an obligor for contempt for failure to pay court-ordered child

14

support.  *See* O.C.G.A. § 19-6-28(a) ("[T]he court . . . shall have the power to punish the respondent who violates any order of the court to the same extent as is provided by law for contempt of the court in any other action or proceeding cognizable by the court."); *see also Ensley v. Ensley*, 239 Ga. 860, 863, 238 S.E.2d 920, 923 (1977) ("A father who wilfully refuses to pay child support which he is able to pay and which is required by an order of court may be found guilty of either civil or criminal contempt of court, or both, and dealt with as provided by law.").  Because Judge Followill acted in a judicial capacity and within the bounds of his jurisdiction when he held Plaintiff in contempt for failure to pay child support, Judge Followill is immune from suit on Plaintiff's § 1983 claims.

    2.   *OCSS*

    Plaintiff also seeks to hold OCSS responsible for false arrest and malicious prosecution under § 1983, although it is unclear from the Complaint how OCSS's actions contributed to these alleged violations.  Section 1983 provides a cause of action against a "person" who violates another's federally-protected rights.  A state agency is not a "person" capable of being sued for damages under § 1983.  *See, e.g., Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995).  OCSS is a state agency.  *See* O.C.G.A. § 19-6-15(a)(6.1) (noting that "[c]hild support services" refers to "the agency within the [Georgia] Department of Human Resources which provides and administers child support services").  Because OCSS is

15

not a "person" subject to suit under § 1983, OCSS's motion to dismiss Plaintiff's § 1983 claims is granted.

### 3. Defendant Hagler

Plaintiff next seeks to hold Hagler liable for false arrest and malicious prosecution. Hagler argues that Plaintiff has failed to state a claim for a § 1983 violation because Plaintiff has failed to show a deprivation of a federal right by a person acting under color of state law. "A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution . . . ." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Although Hagler is a private citizen, he may be found to be acting "under color of state law" for § 1983 purposes if Plaintiff demonstrates Hagler was "a willful participant in joint action with the State or its agents." *Id.* at 1133 (internal quotation marks omitted).

The Court cannot ascertain from Plaintiff's Complaint and proposed amendments how Hagler violated Plaintiff's constitutional rights. Zealous advocacy by an attorney does not rise to the level of a constitutional violation. Moreover, it is clear under the facts alleged by Plaintiff that Hagler did not conspire to violate Plaintiff's constitutional rights, and thus there is no basis for finding Hagler, a private attorney, to be a state actor for purposes of § 1983. When a plaintiff attempts to prove state action by means

16

of establishing a conspiracy between a state actor and a private party, the plaintiff must at least refer to material facts that describe the relationship or nature of the conspiracy between the state actor and the private person. *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984) (per curiam). These material facts must demonstrate "contacts between the [parties] that could prove private and alleged state actors had 'reached an understanding' to violate [Plaintiff's] rights." *Harvey*, 949 F.2d at 1133. "The naked assertion of a conspiracy between a state [actor] and private defendants without supporting operative facts provides an insufficient state action nexus for a section 1983 action." *Phillips*, 746 F.2d at 785; *see also Eubank v. Leslie*, 210 F. App'x 837, 842 (11th Cir. 2006) (per curiam) ("To establish a *prima facie* case of conspiracy, the plaintiff must allege, among other things, that the defendants 'reached an understanding to violate [his] rights.'" (alteration in original) (quoting *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002)); *Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 309 (11th Cir. 2005) (per curiam) ("A plaintiff claiming a conspiracy under § 1983 must make particularized allegations that a conspiracy exists. Vague and conclusory allegations suggesting a § 1983 conspiracy are insufficient to withstand a motion to dismiss." (internal citation omitted)).

Even if the Complaint and the proposed amendments could be construed to allege action by either Hagler *or* a state actor that

17

ultimately caused a constitutional violation, it fails to sufficiently allege "some agreement" between Hagler *and* a state actor to violate Plaintiff's constitutional rights. Because Plaintiff's Complaint, even as amended, fails to state a claim against Hagler for a § 1983 violation, the Court denies Plaintiff's motion to amend and grants Defendant Hagler's motion to dismiss Plaintiff's § 1983 claims for false arrest and malicious prosecution.

## III. Plaintiff's State Law Claims

Plaintiff alleges that he is a citizen of Texas and that Defendants are citizens of Georgia, and he further alleges that the amount in controversy exceeds $75,000.[7] (Compl. ¶ 2.) These allegations are sufficient to confer on this Court diversity jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(a). The Court therefore turns to the causes of action Plaintiff asserts under state law: (1) false arrest, malicious prosecution, and/or false imprisonment; (2) illegal adoption; (3) illegal wage garnishment; (4) fraud; and (5) malpractice. "In a case founded on diversity jurisdiction, the district court must apply the forum state's choice of law rules." *Federated Rural Elec. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006) (per

---

[7]Plaintiff seeks ten million dollars in damages. In addition, Plaintiff avers that he was jailed for being in arrears of child support in the amount of $33,375, and he paid $5,500 to be released from jail. (Compl. ¶ 5, at 5.) The Court cannot say "to a legal certainty that the claim is really for less than the jurisdictional amount" as would be necessary to justify dismissal. *See, e.g, Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).

curiam).  Georgia is the forum state, and under Georgia law, "tort cases are governed by the substantive law of the state where the tort was committed." *Id.* (internal quotation marks omitted).  It appears that no party disputes that the alleged torts were committed in the state of Georgia; thus Georgia law applies.

Although Plaintiff's original Complaint asserted that Texas law governed this case, Plaintiff's proposed amendments seek to correct this deficiency by identifying the Georgia statutes that correspond to his causes of action.  Even assuming that the Court permitted these amendments, however, Plaintiff's Complaint would still be subject to dismissal for the following reasons.

A.   Claims Barred by the *Rooker-Feldman* Doctrine

The Court first finds that it lacks jurisdiction over Plaintiff's claims against Defendants Hagler, Followill, and OCSS for illegal adoption and illegal wage garnishment pursuant to the *Rooker-Feldman* doctrine.  As discussed more thoroughly in section II.A. of this Order, the doctrine "provides that lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Nicholson*, 558 F.3d at 1269 (internal quotation marks omitted).  Plaintiff's claims for illegal adoption and wage garnishment are simply challenges to orders entered by the superior court.  Even if Plaintiff has failed to challenge these orders until now, it is clear that Plaintiff could have challenged them in a Georgia state court but failed to do so. *See, e.g.,* O.C.G.A. § 18-4-

19

65 ("When garnishment proceedings are based upon a judgment, the defendant, by traverse of the plaintiff's affidavit, may challenge the existence of the judgment or the amount claimed due thereon."); *Johnson*, 292 Ga. App. at 354, 665 S.E.2d at 50 (challenge to termination of parental rights based on adoption petition). The Court therefore lacks jurisdiction to review these claims in this proceeding.

> B.   Claims Barred by Judicial Immunity

The Court next finds that Judge Followill is absolutely immune from suit on Plaintiff's state law false arrest, malicious prosecution, fraud, and malpractice claims. Georgia courts "have consistently held that judges are immune from liability in civil actions for acts performed in their judicial capacity." *Smith v. Hancock*, 150 Ga. App. 80, 80, 256 S.E.2d 627, 628 (1979). "[T]his immunity applies even when the judge is accused of acting maliciously and corruptly . . . ." *Id.* at 81, 256 S.E.2d at 628 (affirming judge-defendant's motion to dismiss on the basis of judicial immunity even though the plaintiff's complaint alleged "improper conduct" on the part of the judge); *see also Stump*, 435 U.S. at 356. Even if Plaintiff's claim could be construed to state an otherwise cognizable claim against Judge Followill, Judge Followill is immune from suit. Accordingly, Judge Followill's motion to dismiss is granted with respect to Plaintiff's state law claims.

20

C.   Claims Barred by Sovereign Immunity

The Court next finds that principles of sovereign immunity bar Plaintiff's claims against OCSS.  The Georgia Constitution "insulates the state and its departments and agencies from liability except to the extent that the legislature enacts a specific waiver." *Southerland v. Ga. Dep't of Corr.*, 293 Ga. App. 56, 57, 666 S.E.2d 383, 384-85 (2008).  The Georgia Tort Claims Act, ("GTCA"), O.C.G.A. § 50-21-20, *et seq.*, sets forth the state's limited waiver of sovereign immunity for tort claims.  *Id.*, 666 S.E.2d at 385.  Because "[t]he GTCA represents a waiver of the State's sovereign immunity, limited in extent and manner[,] . . . its provisions should be narrowly construed."  *Doe v. Ga. Dep't of Corr.*, 268 Ga. 582, 583, 492 S.E.2d 516, 517 (1997) (citations omitted).  The party seeking to take advantage of the GTCA's limited and exclusive waiver of sovereign immunity bears the burden of establishing waiver; if waiver is not established, the court lacks subject-matter jurisdiction over the claims asserted.  *See Southerland*, 293 Ga. App. at 57, 666 S.E.2d at 384.

The GTCA provides a number of limitations on a plaintiff's ability to sue a state agency for a tort.  For example, tort actions against government entities must "be brought in the state or superior court of the county wherein the loss occurred," O.C.G.A. § 50-21-28, and the Act does not waive the state's sovereign immunity with respect to claims brought in federal court, O.C.G.A. § 50-21-23(b).

21

The GTCA also requires a plaintiff with a potential tort claim against the state to file an ante litem notice that complies with statutory requirements. *Cummings v. Ga. Dep't of Juvenile Justice*, 282 Ga. 822, 823, 653 S.E.2d 729, 731 (2007).

Plaintiff does not allege that he made any effort to comply with the provisions of the GTCA. Plaintiff's tort claims for false arrest, malicious prosecution, fraud, and malpractice were not brought in the state or superior court of the county where Plaintiff's loss occurred. Furthermore, Plaintiff failed to comply with the procedural requirements for bringing a GTCA claim. *See, e.g., Cummings*, 282 Ga. at 824, 653 S.E.2d at 731 (noting that "[c]ompliance with the ante litem notice provisions is a condition precedent to the claimant's right to file suit against the State"); *Williams v. Ga. Dep't of Human Res.*, 272 Ga. 624, 624, 532 S.E.2d 401, 402 (2000) (holding that even "substantial compliance with the notice provisions is inadequate"). Plaintiff has failed to meet his burden of establishing the limited waiver of sovereign immunity provided by the GTCA. *See, e.g., id.* at 625-26, 532 S.E.2d at 403 (noting that the Georgia Court of Appeals "has dismissed claims when the plaintiff did not give any notice to the state, failed to give notice within 12 months of the accident, and failed to send notice to the Department of Administrative Services and the state agency responsible for the loss"). Accordingly, OCSS, a state agency, is immune from suit on Plaintiff's state-law tort claims.

22

D.   Claims against Defendant Hagler

As a private citizen, Hagler does not enjoy any potential immunities from suit on Plaintiff's remaining state law claims for false arrest, malicious prosecution, false imprisonment, fraud, or malpractice.  Instead, Hagler seeks to dismiss Plaintiff's state law claims against him on the basis that Plaintiff's Complaint, even as amended, demonstrates that the applicable statutes of limitation have expired.

When statute of limitations questions arise in federal court, the court "must look to state law to determine, first, what statute of limitations is applicable, and second, whether that limitations period is tolled." *Dukes v. Smitherman*, 32 F.3d 535, 537 (11th Cir. 1994) (per curiam).  Under Georgia law, Plaintiff "bears the burden of establishing the existence of any facts which would toll the statute of limitations." *AAA Truck Sales, Inc. v. Mershon Tractor Co.*, 239 Ga. App. 469, 470, 521 S.E.2d 403, 405 (1999).  In contrast, federal law controls whether the allegations supporting the claim's accrual date are sufficient for purposes of a defendant's motion to dismiss.  *Cf., e.g., Bernard Schoninger Shopping Ctrs., Ltd. v. J.P.S. Elastomerics, Corp.*, 102 F.3d 1173, 1177 (11th Cir. 1997) (finding that state "law determines when the applicable statute of limitations began to run in this case, but federal law determines whether the evidence supporting this starting date suffices to entitle the defendant to summary judgment").  Dismissal of a claim

23

"on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (internal quotation marks omitted).

Given the foregoing standard, the Court finds that from the face of Plaintiff's Complaint and proposed amendments, Plaintiff's remaining claims against Hagler are untimely. Furthermore, despite Hagler's challenge to the timeliness of Plaintiff's state law claims, Plaintiff has failed to meet his burden of alleging any facts that would warrant tolling the applicable statutes of limitations. Accordingly, Plaintiff's Complaint, even as amended, would be subject to dismissal, and the Court therefore denies Plaintiff's motion to amend and grants Hagler's motion to dismiss. The Court will more specifically discuss each of Plaintiff's claims in turn.

### 1.   *False Arrest and Malicious Prosecution*

Georgia law recognizes three tort causes of action based on the allegedly illegal detention of a person:

> (1) false imprisonment, which is 'unlawful' detention without judicial process, or without the involvement of a judge at any point (O.C.G.A. § 51-7-20); (2) false or malicious arrest, which is detention 'under process of law' (O.C.G.A. § 51-7-1); and (3) malicious prosecution, which is detention with judicial process followed by prosecution (O.C.G.A. § 51-7-40).

*Ferrell v. Mikula*, 295 Ga. App. 326, 329, 672 S.E.2d 7, 10 (2008). Plaintiff mentions all three causes of action in his Complaint. Each of these claims, however, has a two-year statute of limitations.

24

*See, e.g., McClendon v. Kroger Co.*, 279 Ga. App. 417, 417, 631 S.E.2d 461, 461 (2006) (two-year statute of limitations for false arrest and false imprisonment); *Reese v. City of Atlanta*, 247 Ga. App. 701, 703, 545 S.E.2d 96, 98 (2001) (two-year statute of limitations for malicious prosecution).

Even in the face of Hagler's challenge to the timeliness of the false arrest, malicious prosecution claims, and/or false imprisonment claims, Plaintiff offers no explanation why he chose to file his claims nearly twenty years after the arrest forming the basis for them.   Indeed, the Court cannot discern from the Complaint or the proposed amendments which cause of action is most appropriate or when this cause of action even accrued.  *See, e.g., Reese*, 247 Ga. App. at 703, 545 S.E.2d at 98 (noting that the two-year statute of limitations for a malicious prosecution action could only begin to run when the underlying prosecution was terminated in the plaintiff's favor).  The Court thus finds that it is clear from the face of his Complaint and its proposed amendments that Plaintiff's false arrest and malicious prosecutions claims are time-barred.

> 2.   *Legal Malpractice*

Plaintiff next alleges a claim for "malpractice."  A malpractice action is simply a professional negligence action.  *See, e.g., McMann v. Mockler*, 233 Ga. App. 279, 280, 503 S.E.2d 894, 896 (1998).  The only "professional" subject to suit in this case is Hagler; thus, the only potential "malpractice" claim is one for legal malpractice.  In

order to state a claim for legal malpractice, a plaintiff must establish three elements: "(1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff." *Duke Galish, L.L.C. v. Arnall Golden Gregory, L.L.P.*, 288 Ga. App. 75, 76 n.3, 653 S.E.2d 791, 793 n.3 (2007) (internal quotation marks omitted).   "The statute of limitation for legal malpractice actions is four years and runs from the date of the alleged incident of malpractice." *Villani v. Hughes*, 279 Ga. App. 618, 619, 631 S.E.2d 709, 711 (2006) (internal quotation marks omitted).

Plaintiff again fails to allege a date certain when any incident of legal malpractice occurred.  In fact, Plaintiff never alleges that a lawyer-client relationship existed between himself and Hagler, and the existence of such a relationship is necessary element of a malpractice cause of action. *See, e.g., McMann*, 233 Ga. App. at 282, 503 S.E.2d at 897 ("The tort of professional negligence, or malpractice, arises from the relationship (attorney and client) created by contract.").  The most recent date even mentioned in Plaintiff's Complaint and its amendments is 2000, and Plaintiff filed his Complaint in late 2008.  Again, from the face of Plaintiff's Complaint and his proposed amendments, it is clear to the Court that Plaintiff's malpractice claim is time-barred.

3.    Fraud

Plaintiff also alleges a claim for fraud, apparently based on his allegation that Ms. Lewis "continued to harass [him] by placing fraudulent paperwork into the court system with the help of her attorney Richard Hagler for child support on an adopted child and Judge had signed and seal[ed] the adoption papers."[8] (Compl. ¶ 5, at 6.) Plaintiff further alleges that as recently as the year 2000, Ms. Lewis filed allegedly fraudulent motions and fraudulently disposed of marital property. (*Id.*)

Georgia law provides that "[f]raud, accompanied by damage to the party defrauded, always gives a right of action to the injured party." O.C.G.A. § 51-6-1. The tort of fraud requires proof of five elements: "(1) a misrepresentation by the defendant, (2) intent to deceive, (3) intent to induce the plaintiff to act or refrain from acting, (4) justifiable reliance on the misrepresentation, and (5) damage." *Johnson v. Univ. Health Svcs., Inc.*, 161 F.3d 1334, 1341 (11th Cir. 1998) (applying Georgia law). Under Georgia law, fraud claims must be brought within four years. *See Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 387, 649 S.E.2d 779, 784 (2007); *see also* O.C.G.A. § 9-3-31. Additionally, under Georgia law, "[i]f the defendant or those under whom he claims are guilty of a

---

[8]Georgia law does provide a twenty-year statute of limitations for "[a]ctions upon bonds or other instruments under seal." O.C.G.A. § 9-3-23. There is no indication that the "sealed" adoption records referred to by Plaintiff are the type of "instruments under seal" governed by this statute, as suggested by Plaintiff.

fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." O.C.G.A. § 9-3-96.

The Georgia Supreme Court recognizes a cause of action in tort for damages when a defendant makes a wilful misrepresentation to a court and the court acts upon the misrepresentation to the detriment of the plaintiff. *See, e.g., Butler v. Turner*, 274 Ga. 566, 569-70, 555 S.E.2d 427, 431 (2001) (holding that mother could sue father for fraud based upon father's alleged misrepresentation of his finances in a child support action). Plaintiff's Complaint and his proposed amendments can be construed to state a similar cause of action. Again, however, Plaintiff filed his claim at least eight years after the last allegedly fraudulent act described in his Complaint; he therefore bears the burden of alleging facts sufficient to show that the statute of limitations should be tolled. *See, e.g., AAA Truck Sales, Inc.*, 239 Ga. App. at 470, 521 S.E.2d at 405. Given the number of allegedly fraudulent court proceedings and orders, defendants, and claims involved in this lawsuit the Court cannot glean from the face of Plaintiff's Complaint or the proposed amendments any factual basis for showing that the statute of limitations should be tolled due to fraud.

In sum, Plaintiff's Complaint, even as amended, reveals that Plaintiff's state law causes of action against Defendant Hagler are time-barred. Furthermore, neither Plaintiff's Complaint nor his

28

proposed amendments contain a sufficient factual basis for tolling the relevant statutes of limitations.[9]   Thus, even as amended, Plaintiff's Complaint would be subject to dismissal.   Accordingly, the Court denies Plaintiff's motion to amend and grants Defendants' motions to dismiss Plaintiff's state law claims.

CONCLUSION

In summary, the Court makes the following findings based on the allegations contained in Plaintiff's Complaint and Plaintiff's proposed amendments thereto:

1.   Plaintiff's SCRA claims against Judge Followill, OCSS, and Hagler are barred by the *Rooker-Feldman* doctrine, and thus this Court does not have jurisdiction to decide them.

2.   Plaintiff's § 1983 claims against Judge Followill are barred by the doctrine of judicial immunity.

---

[9]Even after being notified that his claims were potentially untimely, Plaintiff (1) failed to seek leave to amend his Complaint to allege facts sufficient to warrant tolling; (2) failed to reply to Hagler's response to Plaintiff's motion to amend in which Hagler argued that Plaintiff's claims, even as amended to assert claims under Georgia law, were time-barred; and (3) failed to propound any specific basis for tolling the statute of limitations in his response to Defendants' motions to dismiss. Plaintiff does contend that he "ha[d] just been recently made aware of all court proceeding[s]" that presumably form the basis for his claims. (Pl.'s Resp. 1.)  This contention, however, does nothing to explain how some act of fraud on the part of a Defendant in this case "debarred or deterred" Plaintiff from bringing the present action, O.C.G.A. § 9-3-96, and the word "recently" is unhelpfully vague.

Although it is true that *pro se* pleadings are to be interpreted liberally, "the liberal construction given to *pro se* pleadings does not mean liberal deadlines." *Robinson v. Schafer*, 305 F. App'x 629, 630-31 (11th Cir. 2008) (per curiam) (internal quotation marks omitted) (affirming district court's dismissal of civil complaint when *pro se* plaintiff failed to sufficiently allege a basis to equitably toll applicable statute of limitations).  The Court finds that Plaintiff had ample opportunity to proffer facts that would support tolling the statute of limitations; in the absence of such proffer, the Court presumes those facts do not exist.

3.   Plaintiff's § 1983 claims against OCSS are barred because OCSS is not a "person" subject to suit under § 1983.

4.   Plaintiff has failed to state a claim against Hagler for violation of 42 U.S.C. § 1983.

5.   Plaintiff's state law claims against Judge Followill, OCSS, and Hagler for illegal adoption and wage garnishment are barred by the *Rooker-Feldman* doctrine, and thus this Court does not have jurisdiction to decide them.

6.   Plaintiff's state law claims for false arrest or imprisonment, malicious prosecution, fraud, and malpractice against Judge Followill are barred by the doctrine of judicial immunity.

7.   Plaintiff's state law claims for false arrest or imprisonment, malicious prosecution, fraud, and malpractice against OCSS are barred by principles of sovereign immunity.

8.   Plaintiff's state law claims for false arrest or imprisonment, malicious prosecution, fraud, and malpractice against Hagler are time-barred.

Based on these findings, the Court concludes that the amendments proposed by Plaintiff cannot save Plaintiff's current Complaint from dismissal. Plaintiff's motion to amend (Doc. 23) is therefore denied as futile. Moreover, the Court grants the motion to dismiss filed by Defendants Followill and OCSS (Doc. 18) and the motion to dismiss filed by Defendant Hagler (Doc. 17). The Court also denies Plaintiff's motions to unseal court records and for a hearing (Docs. 2 & 33). Finally, as to Defendants Rachel and James Lewis, the Court dismisses *sua sponte* Plaintiff's (1) SCRA claims; (2) state law claim for illegal adoption; and (3) state law claim for illegal wage garnishment because the Court lacks jurisdiction over these claims. *See* Fed. R. Civ. P. 12(h) ("If the court determines at any time that

it lacks subject-matter jurisdiction, the court must dismiss the action.").

NOTICE TO PLAINTIFF

As noted at the outset of this Order, neither Defendant Rachel Lewis nor Defendant James Lewis has filed a motion to dismiss. On its own motion, however, the Court has dismissed Plaintiff's SCRA claims and state law illegal adoption and wage garnishment claims for lack of subject-matter jurisdiction. The remainder of Plaintiff's claims against Rachel and James Lewis are still pending at this time.

The Court has serious concerns as to whether Plaintiff's remaining claims against these Defendants are timely. In fact, it is the Court's opinion that Plaintiff's present Complaint and his proposed amendments would not survive a motion to dismiss by Defendants Rachel Lewis and James Lewis based upon the expiration of the statute of limitations. Plaintiff is hereby notified that the Court intends to dismiss Plaintiff's claims against these Defendants unless Plaintiff files an amended complaint within fourteen days of today's Order that alleges specific facts showing that Plaintiff's claims against these two Defendants are not barred by the statute of limitations. *See Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1057 (11th Cir. 2007) (requiring that a plaintiff be notified of the court's intentions and given an opportunity to amend complaint prior to the Court's *sua sponte* non-jurisdictional dismissal).

IT IS SO ORDERED, this 22nd day of May, 2009.


                                    S/Clay D. Land
                                         CLAY D. LAND
                                UNITED STATES DISTRICT JUDGE